## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

X

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY | Civil Action No. 1:23-cv-7769 |
| PLAINTIFF, | **ACTION FOR DECLARATORY JUDGMENT** |
| V. | |
| KM TACTICAL, LLC | <u>JURY TRIAL DEMANDED</u> |
| DEFENDANT. | |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Granite State Insurance Company ("Granite State") files this Complaint against Defendant KM Tactical, LLC ("KM Tactical") for a declaratory judgment under 28 U.S.C. § 2201.

## <u>STATEMENT OF THE CASE</u>

1.      Defendant KM Tactical is firearm retailer based in Missouri.

2.      KM Tactical is a defendant in a series of lawsuits (the "Ghost Gun Lawsuits" or the "Lawsuits," defined further below) brought by the State of New York and various municipalities within the State. The Lawsuits allege that KM Tactical intentionally shipped unfinished frames and receivers—firearm components that the Lawsuits allege are easily assembled into fully functional firearms—into New York, allegedly in violation of federal, state, and local laws. The Lawsuits further allege that KM Tactical's conduct led to firearms coming into possession of persons who were not legally permitted to possess them and that KM Tactical knew this would occur. In addition, the Lawsuits allege that KM Tactical's shipment of unfinished frames and receivers into New York led to a foreseeable increase in gun violence, which has cost the State and its municipalities money.

3.      Plaintiff Granite State issued certain Commercial General Liability insurance policies to KM Tactical from September 2018 to September 2022 (the "Policies"). On information

and belief, KM Tactical has copies of the Policies in its possession, which in the aggregate exceed 400 pages in length and will be provided to KM Tactical upon request.

4.     KM Tactical has requested that Granite State provide KM Tactical with a defense in the Ghost Gun Lawsuits and indemnify it for any settlements or judgments it must pay in those Lawsuits. Through this action, Granite State seeks a declaration that KM Tactical is not entitled to a defense or indemnity, for several independent reasons.

5.     First, the Policies afford KM Tactical coverage only if the Ghost Gun Lawsuits allege an "occurrence," defined as an accident, from the standpoint of KM Tactical. That is not the case here because the Ghost Gun Lawsuits do not charge KM Tactical with *accidental* conduct. Rather, the Ghost Gun Lawsuits allege that KM Tactical deliberately shipped firearm components into New York in violation of various laws, and that it did so knowing its actions would lead to a concomitant increase in gun violence. Those allegations are not allegations of accidental conduct under governing law.

6.     Second, the Policies only cover sums that KM Tactical "becomes legally obligated to pay as damages because of 'bodily injury.'" The Ghost Gun Lawsuits make no such allegations; any sums that KM Tactical may become legally obligated to pay to the State or its municipalities will not be paid as "damages because of" any particular bodily injury.

7.     Third, some or all of the remedies that the plaintiffs in the Ghost Gun Lawsuits seek against KM Tactical are not the kind of "damages" that the Policies cover.

8.     Granite State seeks a declaration that it is not obligated to provide coverage for KM Tactical under the Policies for any of the Ghost Gun Lawsuits.

## **PARTIES**

9.     Plaintiff Granite State is an Illinois corporation with a principal place of business

in New York, New York.

10.    On information and belief, Defendant KM Tactical is a Missouri limited liability corporation with its registered office in Missouri. The Ghost Gun Lawsuits allege that KM Tactical shipped and sold firearms—including unfinished frames and receivers (defined further below)—throughout the United States, including in New York.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over this case under 28 U.S.C. §§ 1332 and 2201. Granite State and KM Tactical are citizens of different states, and, on information and belief, the amount in controversy in this action exceeds $75,000.

12.    This Court has personal jurisdiction over KM Tactical because it transacted business within the State of New York.

13.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Granite State's claims occurred in the Southern District of New York.

14.    KM Tactical has requested coverage from Granite State with regard to the Lawsuits under the Policy that covers the policy period from September 6, 2019 to September 6, 2020, and has asserted that other policies may be implicated.  Granite State disputes that coverage is owed under the Policies, making this an actual, ripe, and justiciable controversy.

## FACTUAL ALLEGATIONS

### I.    The New York Action

15.    On June 29, 2022, the State of New York filed a Complaint in the Supreme Court of the State of New York against various gun sellers, including Defendant KM Tactical. The case was subsequently removed to the United States District Court for the Southern District of New York, where it is captioned *New York v. Arm or Ally, LLC, et al.*, No. 1:22-cv-06124-JMF

(S.D.N.Y.) (the "New York Action"). The operative complaint in the New York Action as of the filing of this lawsuit is the State of New York's Second Amended Complaint (the "New York Action Complaint"). *See id.* ECF No. 157.

16.   The New York Action Complaint alleges that various federal, state, and local laws govern the sale and distribution of firearms in the United States. Among other things, the New York Action Complaint alleges that:

- Purchasers of firearms must possess a license for the firearm or pass a background check. *See, e.g.*, 18 U.S.C. § 922(t).
- Certain individuals are prohibited entirely from possessing firearms; among those are persons convicted of felonies, *see id.* § 922(d)(1), and persons subject to a restraining order, *see id.* § 922(d)(8).
- A firearm sold in the United States is also required to have a serial number, *see id.* §§923(g)(1)(A); 923(i), so that it is traceable if it is used in the commission of a crime.

17.   The New York Action Complaint also alleges certain facts about the assembly of firearms and the regulation of firearm components. The New York Action Complaint alleges that:

- A firearm is made of several component parts, with the core of the firearm being referred to as the "frame" (for a pistol or a handgun) or the "receiver" (for a long gun such as a rifle or shotgun).
- Frames and receivers are subject to the same background check, licensing, and serialization requirements as fully functional firearms, as they fall within the federal definition of "firearm." *See id.* § 921(a)(3) (defining "firearm" to include "the frame or receiver of" a firearm).
- Many firearms manufacturers and distributors sell "unfinished" frames or receivers: that is, frames or receivers that do not yet constitute fully functional firearms.
- Defendant KM Tactical is among the companies that have sold and distributed unfinished frames or receivers in New York without background checks or serial numbers.
- An unfinished frame or receiver, when properly combined with other necessary components, forms a fully functional firearm.
- When an unfinished frame or receiver sold without a serial number is converted to a fully functional firearm, it is referred to as a "ghost gun."

18.   The New York Action Complaint alleges that KM Tactical "sold unfinished frames or receivers into New York State knowing, intending, or being willfully blind to the fact that these

products would be converted into working, unserialized firearms, while marketing their products as a way around serialization requirements, and portraying serialization as optional, unnecessary, or undesirable."

19.     The New York Action Complaint alleges that KM Tactical sold unfinished frames and receivers in violation of the federal laws listed *supra* at ¶ 16.

20.     The New York Action Complaint alleges that KM Tactical violated New York state law by knowingly selling or distributing unfinished frames and receivers into New York State after April 26, 2022, when a law prohibiting those actions went into effect.

21.     The New York Action Complaint alleges that KM Tactical violated New York City law by shipping unfinished frames or receivers into New York City after February 23, 2020, which was the effective date of a New York City ban on the possession of an unfinished frame or receiver.

22.     The New York Action Complaint alleges that many of the unfinished frames or receivers that KM Tactical shipped into New York State were shipped to individuals who were not permitted to possess firearms under federal law. The New York Action Complaint further alleges that KM Tactical deliberately marketed its unfinished frames and receivers as a way to evade federal firearm regulations, including the serialization requirement. KM Tactical allegedly undertook all of these actions from June 2016 to the present.

23.     The New York Action Complaint alleges that KM Tactical's actions have caused monetary harm to New York. In particular, New York alleges that it has had to increase spending on law enforcement in order to combat ghost-gun-related (and, thus, unfinished-frame-and-receiver-related) crime, and that it has had to expand community support and services to aid the victims of ghost-gun-related crime.

24.     The New York Action Complaint brings seven counts against KM Tactical: repeated and persistent illegality; repeated and persistent fraudulent conduct; public nuisance; engaging in deceptive acts or practices in the conduct of business, trade, or commerce; false advertising; negligence per se; and negligent entrustment. As a remedy, it seeks, *inter alia*, an injunction against KM Tactical, restitution and damages for the harms that KM Tactical allegedly caused, disgorgement of revenue, abatement, civil penalties, and punitive damages.

## II.     The Buffalo And Rochester Actions

25.     On December 20, 2022, the City of Buffalo filed a lawsuit (the "Buffalo Action," now captioned *City of Buffalo v. Smith & Wesson Brands, Inc., et al.*, No. 1:23-cv-00066-FPG (W.D.N.Y.)) against various defendants, including KM Tactical. The next day, the City of Rochester filed a nearly identical lawsuit (the "Rochester Action," now captioned *City of Rochester v. Smith & Wesson Brands, Inc., et al.*, No. 6:23-cv-06061-FPG (W.D.N.Y.)) which also named KM Tactical  as one of several defendants.

26.     The operative complaints in those actions allege that KM Tactical engaged in the same conduct as the New York Action Complaint: knowingly selling and shipping unfinished frames and receivers into Buffalo or Rochester in violation of state and federal law.

27.     The operative complaints in the Buffalo and Rochester Actions also include additional allegations about the firearms market in the United States more generally. Those complaints allege that:

- Sales of firearms through those official channels—that is, sales by officially licensed firearms dealers to individuals who pass background checks or have licenses and who are not prohibited from owning firearms—constitute the legal market for firearms in the United States.
- There is also, however, an illegal market for firearms, which encompasses sales that violate federal or state law, such as a sale of a firearm to a person convicted of a felony (who, consequently, could not pass a federal background check).

- Firearms may move from the legal to the illegal market; that is, a firearm may be sold legally only to subsequently be sold or distributed to a person who is not legally permitted to possess it.

28.     Buffalo and Rochester allege that KM Tactical contributed to the illegal firearms market, including by knowingly refusing to take actions that could help prevent the diversion of its products from the legal gun market to the illegal gun market, and that in so doing it has helped to create a public nuisance within the plaintiff cities.

29.     The damages alleged by Buffalo and Rochester are all but identical to the damages that New York State claims to have suffered. Specifically, Buffalo and Rochester allege that they have had to increase spending on law enforcement in order to combat gun-related crime and expand community support and services to aid victims of gun-related crimes.

30.     Buffalo and Rochester both assert four causes of action against KM Tactical: violation of New York General Business Law § 898 (a-e); common law public nuisance; deceptive business practices in violation of New York General Business Law 349; and deceptive business practices in violation of New York General Business Law 350.

31.     The Buffalo and Rochester Actions seek, *inter alia*, compensatory damages, abatement, treble damages, and punitive damages.

32.     We refer to the New York Action, the Buffalo Action, and the Rochester Action collectively as the "Ghost Gun Lawsuits" or the "Lawsuits."

### III.   The Policies And KM Tactical's Claims For Coverage

33.     Granite State issued the following Commercial General Liability policies to KM Tactical:

- Policy No. 02-LX-080837309-0, effective September 6, 2018 to September 6, 2019;
- Policy No. 02-LX-080837309-1, effective September 6, 2019 to September 6, 2020;

- Policy No. 02-LX-013240229-0, effective September 6, 2020 to September 6, 2021; and

- Policy No. 02-LX-013240229-1, effective September 6, 2021 to September 6, 2022.

34.     KM Tactical tendered the Ghost Gun Lawsuits to Granite State through its third-party claims agent Athens Program Insurance Services, LLC.  Through those notices of loss, KM Tactical requests that Granite State pay for KM Tactical's defense expenses and indemnify it for any settlements it agrees to or damages it is ordered to pay in the Ghost Gun Lawsuits.

35.     Granite State denied KM Tactical's claims for coverage as to each of the Ghost Gun Lawsuits.

## IV.    KM Tactical Is Not Entitled To Coverage Under the Policies

36.     The Policies do not provide coverage to KM Tactical unless the underlying allegations against KM Tactical meet the requirements for coverage set forth in the Policies.

37.     Subject to their other terms and conditions, the Policies afford coverage to KM Tactical for losses KM Tactical is "legally obligated to pay as damages because of 'bodily injury'" that took place during the policy periods of the Policies and that were "caused by an occurrence."

38.     There is no coverage for the Ghost Gun Lawsuits under the Policies because, *inter alia*:

- The Ghost Gun Lawsuits do not allege accidental conduct by KM Tactical and, therefore, do not allege an "occurrence";

- The Ghost Gun Lawsuits do not allege "damages because of 'bodily injury'"; and

- The Ghost Gun Lawsuits seek certain remedies, such as equitable relief and injunctive relief in the form of nuisance abatement, that do not constitute "damages" pursuant to the Policies.

**COUNT I:**
**(For A Declaration That Granite State Is Not Obligated**
**To Defend KM Tactical In The Ghost Gun Lawsuits)**

39.     Granite State reasserts and incorporates herein each of the allegations set forth in paragraphs 1-38 above.

40.     KM Tactical has asserted it is entitled to a defense of the Ghost Gun Lawsuits under the Policies. Granite State disputes any such right to a defense.

41.     Granite State seeks a declaration that, under the terms, conditions, and exclusions of the Policies, as well as applicable law, Granite State has no duty to defend KM Tactical with regard to the Ghost Gun Lawsuits.

42.     On Count I of the Complaint, Granite State is entitled to a judgment declaring that the Policies do not obligate it to defend KM Tactical in the Ghost Gun Lawsuits.

**COUNT II:**
**(For A Declaration That Granite State Is Not Obligated**
**To Indemnify KM Tactical In The Ghost Gun Lawsuits)**

43.     Granite State reasserts and incorporates herein each of the allegations set forth in paragraphs 1-42 above.

44.     KM Tactical has asserted it is entitled to indemnity in connection with the Ghost Gun Lawsuits under the Policies. Granite State disputes any such right to indemnity.

45.     Granite State seeks a declaration that, under the terms, conditions, and exclusions of the Policies, as well as applicable law, KM Tactical is not entitled to indemnity with regard to the Ghost Gun Lawsuits.

46.     On Count II of the Complaint, Granite State is entitled to a judgment declaring that the Policies do not obligate it to indemnify KM Tactical with regard to the Ghost Gun Lawsuits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Granite State Insurance Company respectfully requests that the Court enter an order and judgment:

1) Declaring that the Policies do not obligate Granite State to defend KM Tactical in the Ghost Gun Lawsuits;

2) Declaring that the Policies do not obligate Granite State to indemnify KM Tactical for any sums it is obligated to pay as settlements of or judgments in the Ghost Gun Lawsuits; and

3) Granting to Granite State such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: August 31, 2023                                    Respectfully submitted,

/s/ Christopher J. St. Jeanos
Christopher J. St. Jeanos
James Fitzmaurice
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
212-728-8000
cstjeanos@willkie.com

John B. Goerlich
WILLKIE FARR & GALLAGHER LLP
1875 K St. NW
Washington, DC 20006
202-303-1000
jgoerlich@willkie.com