UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                         :

GRANITE STATE INSURANCE     :       23 Civ. 7769 (ALC) (GS)
COMPANY,                       :
                         :
           Plaintiff,        :       <u>OPINION & ORDER</u>
                         :
       - against -        :
                         :
KM TACTICAL, LLC,          :
                         :
          Defendant.      :
------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Pending before the Court is Defendant's motion to transfer the venue of this action to the United States District Court for the Western District of Missouri (the "Missouri Court"). (Dkt. No. 44). For the reasons set forth below, KM Tactical's motion is **DENIED**.[1]

## BACKGROUND

### A. Factual Background[2]

This action invokes the Court's diversity jurisdiction. (Compl. ¶ 11). Plaintiff Granite State Insurance Company ("Plaintiff" or "Granite State") is an Illinois

---

[1] On December 26, 2023, the Honorable Andrew L. Carter, Jr. referred KM Tactical's motion to transfer venue to the undersigned for an opinion and order. (Dkt. No. 38). *See Mulgrew v. U.S. Dep't of Transp.*, ___F. Supp. 3d ___, 2024 WL 665948, at *1 n.1 (E.D.N.Y. Feb. 17, 2024) ("[b]ecause a motion to transfer venue is non-dispositive," it may be decided by "order pursuant to 28 U.S.C. § 636(b)(1)(A), rather than by issuing a report and recommendation").

[2] This background is drawn from the parties' pleadings and submissions in support of, and in opposition to, KM Tactical's instant motion. The Court specifically relies on the following: Granite State's Complaint (Dkt. No. 1) ("Compl."); KM Tactical's Answer and Counterclaims (Dkt. No. 18) ("Answer" and "Counterclaims," respectively); KM Tactical's brief in support of its motion to transfer venue and the exhibits annexed thereto (Dkt. No. 45) ("Def. Br."); Granite State's opposition brief (Dkt. No. 46) ("Pl. Br."); the Declaration of Christopher J. St. Jeanos and exhibits thereto, submitted

corporation with its principal place of business in Manhattan.  (*Id.* ¶ 9).  Defendant

KM Tactical, LLC ("Defendant" or "KM Tactical") is organized under the laws of

Missouri and is based in Missouri.  (Answer ¶¶ 1, 10; Counterclaims ¶ 1).

The substance of the parties' dispute turns on Granite State's obligations

under several commercial general liability policies it issued to KM Tactical,

covering annual policy periods from September 2018 to September 2022 (the

"Policies").  (Compl. ¶¶ 3, 33; Def. Br. Ex. 2).  Granite State contends that under the

Policies, it is not obligated to defend or indemnify KM Tactical in three separate

lawsuits brought against KM Tactical, among other defendants, by government

entities in New York (the "Underlying Lawsuits").  (Compl. ¶¶ 4, 36–38).  KM

Tactical, on the other hand, contends Granite State's denial of coverage with respect

to the Underlying Lawsuits is a violation of the Policies.  (Counterclaims ¶¶ 7–28).

Each of the Underlying Lawsuits concerns allegations that KM Tactical

intentionally sold and shipped unfinished firearm frames and receivers into New

York in violation of gun laws and regulations.  The firearm parts allegedly were

combined with other components and converted into fully functioning firearms,

known as "ghost guns," leading to an increase in gun violence throughout the state.

(Compl. ¶¶ 15–32; Answer ¶¶ 2, 15–32; St. Jeanos Decl. Exs. 1–3).  The first lawsuit

was initiated by the Attorney General of New York State and is currently pending

in this Court before the Honorable Jesse M. Furman.  *See New York v. Arm or Ally,*

*LLC*, No. 22 Civ. 6124 (JMF) (S.D.N.Y. July 18, 2022).  The second and third

---

in support of Granite State's opposition (Dkt. No. 47) ("St. Jeanos Decl."); and KM Tactical's reply in
further support of its motion and the exhibit thereto (Dkt. No. 48) ("Def. Reply").

lawsuits were initiated by the Cities of Buffalo and Rochester, respectively, and are currently pending in the Western District of New York. *See City of Buffalo v. Smith & Wesson Brands, Inc.*, No. 1:23 Civ. 66 (FPG) (W.D.N.Y. Jan. 23, 2023); *City of Rochester v. Smith & Wesson Brands, Inc.*, No. 6:23 Civ. 6061 (FPG) (W.D.N.Y. Jan. 24, 2023).

Three other insurance coverage lawsuits, similar to this action, were initiated by Granite State in this Court. Granite State brought these actions against KM Tactical's fellow defendants in the Underlying Lawsuits and alleges, much as it does here, that it is not obligated to defend or indemnify these defendants in the Underlying Lawsuits (as applicable) under insurance policies it issued to the defendant entities (collectively, the "Coverage Actions"). (*See* Def. Br. at 5–7 (citing *Granite State Ins. Co. v. GS Performance, LLC*, No. 23 Civ. 7646 (LJL) (S.D.N.Y. Aug. 29, 2023); *Granite State Ins. Co. v. Primary Arms, LLC*, No. 23 Civ. 7651 (LGS) (S.D.N.Y. Aug. 29, 2023); *Granite State Ins. Co. v. Rainier Arms, LLC*, No. 23 Civ. 7644 (MMG) (S.D.N.Y. Aug. 29, 2023)).

In each of the Coverage Actions, Granite State filed a motion for partial summary judgment. Recently, in the *Primary Arms* case, the Honorable Lorna G. Schofield granted Granite State's motion for partial summary judgment and held that Granite State did not have a duty to defend the insured in the Underlying Actions under the relevant policies. (Dkt. Nos. 50 & 50-1 at 9). *See Granite State*

3

*Ins. Co. v. Primary Arms, LLC*, No. 23 Civ. 7651 (LGS), 2024 WL 4008167 (S.D.N.Y.

Aug. 30, 2024).[3]

## B.    Procedural History

On August 31, 2023, two days after Granite State initiated the Coverage

Actions, it filed its Complaint in the instant action seeking a declaratory judgment

with respect to its coverage obligations for the Underlying Lawsuits under the

Policies.  (Compl. ¶¶ 39–46).  Granite State simultaneously provided KM Tactical

with a letter informing KM Tactical of its decision to deny coverage.  (Counterclaims

¶ 13; Def. Br. at 2).  On October 23, 2023, KM Tactical submitted its Answer and

asserted counterclaims against Granite State for breach of contract and bad faith

denial of coverage, as well as a corresponding declaratory judgment claim on

Granite State's coverage obligations.  (Counterclaims ¶¶ 15–28).[4]

On November 30, 2023, ten days after filing its Answer and Counterclaims in

this action, KM Tactical initiated a similar action in the Western District of

Missouri (the "Missouri Action"), against another insurer from which KM Tactical

requested coverage for the Underlying Lawsuits, Berkshire Hathaway Specialty

Insurance Company ("BHSI").  *See KM Tactical, LLC v. Berkshire Hathaway*

*Specialty Ins. Co.*, No. 4:23 Civ. 874 (DGK) (W.D. Mo. Nov. 30, 2023).  Five days

---

[3] Judge Schofield observed that this ruling also appeared to be dispositive in Granite State's favor on its duty to indemnify, and following a letter from the parties indicating they agreed with this assessment, Judge Schofield directed the Clerk to enter judgment for Granite State on all counts and terminate the case.  *See id.*, Dkt. Nos. 49–52.

[4] On December 8, 2023, Granite State submitted a letter-motion for a conference in this action to discuss proceeding with the same bifurcated approach used in the Coverage Actions (*i.e.*, early partial summary judgment motions on the duty to defend and staying the issue of the duty to indemnify).  (Dkt. No. 33; *see also* Pl. Br. at 8).  On December 26, 2023, Judge Carter denied Granite State's request pending resolution of KM Tactical's instant motion to transfer venue.  (Dkt. No. 37).

later, KM Tactical filed an amended complaint in the Missouri Action naming Granite State as an additional defendant.  *See id.*, Dkt. No. 6.  The claims and issues in the Missouri Action are, as between Granite State and KM Tactical, substantially the same as those in the instant action.  (*Compare id.*, Dkt. No. 6 ¶¶ 1, 4–6, 15–26 *with* Counterclaims ¶¶ 7, 11–28).[5]

On February 16, 2024, KM Tactical filed its instant motion to transfer this action to the Missouri Court pursuant to 28 U.S.C. § 1404(a) so that it could be heard together with the Missouri Action.  (Dkt. Nos. 44 & 45 at 2).  On March 22, 2024, Granite State submitted its opposition and supporting papers (Dkt. Nos. 46 & 47), and on April 5, 2024, KM Tactical submitted its reply (Dkt. No. 48).

Meanwhile, on February 9, 2024, Granite State filed a motion to dismiss or stay the Missouri Action in light of the instant case, which is the "first-filed" action.  *KM Tactical*, No. 4:23 Civ. 874 (DGK) (W.D. Mo.), Dkt. No. 25.  BHSI joined in the motion.  *Id.*, Dkt. No. 41.  On May 1, 2024, the Honorable Greg Kays granted Granite State's motion to stay the Missouri Action pending the resolution of KM Tactical's motion to transfer pending before this Court.  (Dkt. Nos. 49 & 49-1).  Applying Eighth Circuit precedent, Judge Kays found that KM Tactical had not shown a basis for declining to follow the first-filed rule and that and, if anything, the balance of convenience tilts towards venue in the Southern District of New

---

[5] Although not presently a party to the instant action, on February 1, 2024, BHSI filed a letter-motion in this action, requesting a conference to discuss its intention to file a motion to intervene pursuant to Federal Rule of Civil Procedure 24(b).  (Dkt. No. 41).  The Court has not yet ruled on BHSI's request.

York.  *See KM Tactical, LLC v. Berkshire Hathaway Specialty Ins. Co.*, No. 4:23-cv-0874-DGK, 2024 WL 2951760 (W.D. Mo. May 1, 2024).

## LEGAL STANDARDS

### A.    28 U.S.C. § 1404(a)

Under Section 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought, "'[f]or the convenience of parties and witnesses, in the interest of justice.'"  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting 28 U.S.C. § 1404(a)).  In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), the Supreme Court clarified that "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."  *Id.* at 60.

A district court typically evaluates a motion to transfer pursuant to Section 1404(a) under a two-pronged inquiry.  The court first "examines whether the case could have been brought in the [] district" in which the movant seeks to have the case litigated.  *Pence v. GEE Grp., Inc.*, 236 F. Supp. 3d 843, 849 (S.D.N.Y. 2017).  If the action could have been brought in the proposed transferee district, the court turns to examine several factors under the second prong: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus

of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112 (citations omitted). Courts in this district have also considered "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice." *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011).

The moving party bears the burden to establish by "clear and convincing" evidence that the balance of convenience favors transfer. *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114. "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (quoting *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)).

## B.    The First-Filed Rule

"Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a first-filed rule, whereby the court which first has possession of the action decides it." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) (citations omitted), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010); *accord Simmons*, 878 F.2d at 79. "This rule embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum." *Empl'rs*

7

*Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (cleaned

up).  It is only applicable "where in fact the suits are duplicative," meaning the

cases have "identical or substantially similar parties and claims."  *Am. S.S. Owners*,

474 F. Supp. 2d at 481 (citation omitted).

The first-filed action takes priority absent (1) "special circumstances" or (2) a

"balance of convenience" in favor of the second-filed action.  *Simmons*, 878 F.2d at

79.

### 1.    Special Circumstances

"Special circumstances are present when the first suit was filed as a result of

forum shopping or when the first suit was a result of 'anticipatory filing.'"  *Liberty*

*Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 390 (S.D.N.Y. 2014) (quoting

*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 511 (S.D.N.Y.

2004)).  The Second Circuit has noted that "the chief special circumstance . . . is our

interest in discouraging forum shopping."  *Motion Picture Lab. Technicians Local*

*780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986) (citation omitted);

*see also Kellen Co., Inc. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 223 (S.D.N.Y.1999)

("Most commonly, courts have recognized an exception to the first-filed rule where

the first-filed action was instituted by the defendant in the second action, and the

defendant won the race to the courthouse under questionable circumstances.").

The Second Circuit has emphasized that for forum shopping to constitute a

special circumstance, "the first-filing plaintiff must engage in some manipulative or

deceptive behavior, or the ties between the litigation and the first forum must be so

tenuous or de minimis that a full 'balance of convenience' analysis would not be

necessary to determine that the second forum is more appropriate than the first."

*Wausau*, 522 F.3d at 276.  In other words, the evidence must show that "forum

shopping *alone* motivated the choice of the situs for the first suit."  *Id.* (emphasis in

original) (citation omitted).  The party that seeks to deviate from the rule on the

basis of forum shopping has the burden of demonstrating that circumstances

justifying an exception exist.  *See, e.g.*, *Hanson PLC v. Metro–Goldwyn–Mayer Inc.*,

932 F. Supp. 104, 106 (S.D.N.Y. 1996).

## 2.    Balance of Convenience

The "balance of convenience" factors used to analyze the applicability of the

first-filed rule are "essentially the same" as those used in deciding a motion to

transfer venue under Section 1404(a), "so a single analysis will resolve both issues."

*Am. S.S. Owners*, 474 F. Supp. 2d at 481; *accord Wausau*, 522 F.3d at 275.  Thus,

"[t]he first-filed rule does not supersede the inquiry into the balance of convenience

under § 1404(a)."  *MK Sys., Inc. v. Schmidt*, No. 04 Civ. 8106 (RWS), 2005 WL

590665, at *3 (S.D.N.Y. Mar. 10, 2005) (citation omitted).  "Consequently, where the

first-filed rule is invoked in support of a motion to transfer, the court considers the

rule as one among several factors in the overall calculus of efficiency and the

interests of justice."  *Am. S.S. Owners*, 474 F. Supp. 2d at 481.

The moving party bears the burden of demonstrating that the balance of

convenience favors transfer, and "'[t]he plaintiff's choice of forum should not be

disturbed unless the balance of the factors tips heavily in favor of transfer.'"  *Liberty*

*Mut. Ins. Co.*, 17 F. Supp. 3d at 396 (quoting *Izkhakov v. Educ. Comm'n for Foreign Med. Graduates*, No. 12 Civ. 348 (ALC), 2012 WL 2861338, at *3 (S.D.N.Y. July 10, 2012)); *see also Wausau*, 522 F.3d at 275 ("An even or inconclusively tilted 'balance of convenience' would ordinarily support application of the first-filed rule.") (citation omitted).

## DISCUSSION

The parties do not dispute that this action is duplicative of the second-filed Missouri Action (*see* Def. Br. at 3; Plf. Br. at 12), which creates the presumption that Granite State's choice of forum—New York—should be honored. *See Wausau*, 522 F.3d at 275. KM Tactical argues, however, that the Court should depart from this presumption because special circumstances exist and the balance of convenience weighs in favor of transfer to Missouri. (*See generally* Def. Br. & Reply).[6] The Court addresses KM Tactical's arguments in turn, and finds them to be unavailing.

### A.    Special Circumstances Do Not Exist to Warrant Departure from the First-Filed Rule

KM Tactical argues that special circumstances exist here both because Granite State engaged in forum shopping and because its initiation of this declaratory judgment action was an improper anticipatory filing. (*See* Def. Br. at

---

[6] KM Tactical largely asserts its arguments in terms of the factors to be considered on a motion to transfer venue under Section 1404(a), rather than directly responding to Granite State's argument that the first-filed rule applies here. Because the first-filed rule plainly applies here given the concededly duplicative nature of the two actions, and KM Tactical's arguments are equally relevant to an analysis under the first-filed rule, the Court construes KM Tactical's arguments as opposing application of the first-filed rule. *See, e.g.*, *Am. S.S. Owners*, 474 F. Supp. 2d at 481.

7–9; Reply at 4–5). As the moving party, KM Tactical bears the burden of sufficiently supporting these contentions to justify departing from Granite State's choice of forum. *See Hanson PLC*, 932 F. Supp. at 106. KM Tactical's arguments fall short.

First, with respect to forum shopping, KM Tactical relies on the fact that Granite State "refused to provide a coverage opinion for at least 157 days," or until it simultaneously initiated this action and provided the denial letter, and argues this shows Granite State spent this time "perfecting its forum-selection strategy." (Def. Br. at 7–8 (emphasis omitted)). KM Tactical provides no direct evidence to support its conclusion, but rather asks the Court to infer from the delay alone that this must be true. Giving KM Tactical the benefit of this dubious inference for the moment, this does not mean that Granite State engaged in "forum-shopping" for purposes of this exception to the first-filed rule. "As defined in this area of doctrine, '[f]orum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice.'" *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 Civ. 8751 (PAE), 2012 WL 844284, at *7 (S.D.N.Y. Mar. 13, 2012) (quoting *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 470 (S.D.N.Y. 2002)).

Here, Granite State has its principal place of business in New York. "'A party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping.'" *Id.* (quoting *Schnabel,* 322 F. Supp. at 513–14). Moreover, the Underlying

11

Lawsuits that are the subject of the policy coverage dispute are all pending in New York, and Granite State has filed three other insurance coverage actions arising from the Underlying Lawsuits in this District. Thus, this forum has far more than a "slight connection" to the factual circumstances surrounding this action.

KM Tactical contends that Granite State's delay in providing a coverage opinion was "manipulative and deceptive" because it constitutes an unfair claims settlement practice under Missouri and New York insurance regulations. (Def. Br. at 7–8; Reply at 4–5 (citing Mo. Code Regs. tit. 20, § 100-1.050(1)(A) & (C) and NY Code Regs. tit. 11, §§ 216.5(a) & 2.16.6(c), which provide, *inter alia*, that an insurer is to advise the insured of its coverage decision within 15 days of receiving notice of the claim or request further information)).

Granite State disputes that its purported delay constitutes an improper practice under either Missouri or New York regulations (Pl. Br. at 15 n.7), and explains that it spent the time in question engaging in a "thorough investigation" of its coverage obligations under the Policies, consistent with the practices of a "responsible insurer, as has been recognized repeatedly by the Second Circuit, the SDNY, and New York state courts." (*Id*. at 7, 14–15 (collecting cases)). It also argues that KM Tactical failed to notify it of the Underlying Lawsuits until nine months after the first suit was filed, in violation of KM Tactical's obligations under the Policies. (*Id*. at 7 & 15 n.7).

The Court need not wade into the minutiae of Missouri and New York insurance regulations or KM Tactical's notice obligations under the Policies to

12

decide this issue.  KM Tactical does not even claim that Granite State misrepresented any facts to it and a mere violation of a regulatory notice provision (assuming, *arguendo*, that one occurred) does not establish "manipulative or deceptive behavior" to trigger the special circumstances exception to the first-filed rule.  *See Holiday Image LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, No. 14 Civ. 8660 (JMF), 2015 WL 366931, at *3 (S.D.N.Y. Jan. 28, 2015) ("Plaintiff suggests that, but for Defendants' conduct, it might have consulted litigation counsel earlier . . ., but it cites no authority for the proposition that a delay in contacting counsel alone constitutes special circumstances sufficient to overcome the first-filed rule.").

Second, KM Tactical argues special circumstances exist because this declaratory judgment action constitutes an anticipatory filing designed only to wrest the choice of forum from the "natural plaintiff," KM Tactical.  (*See* Def. Br. at 8–9 (arguing that Granite State's declaratory judgment action "serves only to anticipate the defenses it has to KM Tactical's breach of contract claim for damages—at its core, Granite State merely asserts that it did *not* breach the Policies") (emphasis in original)).  This argument is without merit.

Courts have routinely found insurers are well within their rights to disclaim coverage by filing a declaratory judgment action, as Granite State points out (Pl. Br. at 14–15 (collecting cases)).  *See, e.g.*, *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 775 F. Supp. 101, 110 (S.D.N.Y.1991) ("Under New York law, the filing of a declaratory judgment action by an insurance company concerning liability for a

particular claim is sufficient notice of disclaimer.").  And courts have further found

that an insurer's initiation of a declaratory judgment action to determine coverage

is not improperly anticipatory.  *See, e.g.*, *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at

390, 393–95 (rejecting defendant's argument that lawsuit was an "illegitimate

declaratory judgment action" where Liberty Mutual sought a "declaration that it is

not responsible for covering anything more than its 'allocable share' for

[defendant's] defense and indemnity costs relating to [] asbestos actions"); *Wausau*,

522 F.3d at 277 (declaratory judgment action in coverage dispute "was not

improperly anticipatory" where there was "no notice letter or other communication

conveying a specific threat of litigation").  Accordingly, KM Tactical has failed to

show that special circumstances warrant an exception to the first-filed rule.

## B.    The Balance of Convenience Does Not Favor Venue in Missouri

While departure from the first-filed rule may nonetheless be warranted if the

balance of convenience favors transferring this action to the Missouri Court, *see MK*

*Sys., Inc*, 2005 WL 590665, at *4, KM Tactical does not provide any "clear and

convincing" evidence that a transfer is warranted here, *see N.Y. Marine & Gen. Ins.*

*Co.*, 599 F.3d at 114.

"The law is clear that the moving party must supply an affidavit that

contains detailed factual statements explaining why the motion should be granted,

including information on the potential principal witnesses along with a general

statement as to their testimony."  *Atlasjet Uluslararasi Havacilik A.S. v. EADS*

*Aeroframe Servs., LLC*, No. 07 Civ. 212 (RJS), 2009 WL 436420, at *3 (S.D.N.Y.

Feb. 17, 2009) (cleaned up).  KM Tactical has not submitted any affidavits, arguing

instead the facts on which it relies can "mostly" be "gleaned" from the record. (Reply at 2–3 & ns. 1–15 (citing filings in this action and the Missouri Action)).  But KM Tactical simply asserts numerous facts in its brief without any citation to the record.  These include factual propositions central to the balance of convenience analysis, such as the location of party and non-party witnesses (Def. Br. at 2), the location of relevant proof and the difficulty of shipping such proof to New York (*id.* at 6), and the claim that KM Tactical is a "small company run by a husband-and-wife duo" who would be significantly "burdened" litigating in New York (*id.*).[7]

KM Tactical's submissions are plainly insufficient for the Court to find the balance-of-convenience weighs in favor of transfer, or even conduct a meaningful factor-by-factor analysis.  This is reason enough to reject KM Tactical's balance of convenience argument.  *See Atlasjet Uluslararasi Havacilik A.S.*, 2009 WL 436420, at *3 (denying motion to transfer venue where "Defendants offer nothing more than conclusory assertions [in their brief] that witnesses will be inconvenienced if the suit remains in this District"); *Gen. Elec. Cap. Corp. v. Titan Aviation, LLC*, No. 06 Civ. 4795 (LTS) (FM), 2007 WL 107752, at *7 (S.D.N.Y. Jan. 16, 2007) ("Defendants have failed to submit the requisite factual proffer insofar as their application is predicated on the convenience of parties and witnesses.").

---

[7] While KM Tactical has provided minimal evidence that the Court may consider, including that the Policies were issued in Missouri, as evident from the face of the documents themselves (Pl. Br. at 2), that is not enough for KM Tactical to meet its burden here.  *See Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 395 ("the plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of transfer") (cleaned up).

In any event, the Court has carefully considered the parties' respective arguments under the balance of convenience factors and agrees with Judge Kays' conclusion in the Missouri Action that "KM Tactical has failed to carry its burden of showing" that those factors weigh in favor of a transfer to the Missouri Court. *KM Tactical*, 2024 WL 2951760, at *2. After considering submissions from both KM Tactical and Granite State that substantially overlap with those before the Court now,[8] Judge Kays persuasively reasoned:

> The balance of convenience does not weigh in favor of venue being in [Missouri]. If anything, it tilts towards venue being in the SDNY. The convenience of the parties and witnesses does not weigh in favor of either venue since several KM Tactical employees live nearby in Lee's Summit, Missouri, but Granite State maintains its principal place of business in New York, and the relevant discovery that may be produced will likely be in New York. However, the interests of justice, including the efficient administration of justice, weigh slightly in favor of venue being in the SDNY, where coverage actions involving similar policies issued to other ghost gun manufacturers are being litigated. And litigating similar coverage lawsuits in the same district will likely improve judicial efficiency. Hence, the "balance of convenience" exception does not apply here.

*Id.*

Since the time Granite State informed the Court of this decision (Dkt. No. 49), KM Tactical has not provided any reason why the Court should reach a different conclusion here, and the Court declines to do so. *See Loadholt v. Herbs & Arts Intergalactic, Inc.*, No. 22 Civ. 7591 (PAE) (JLC), 2023 WL 2768064, at *7

---

[8] Indeed, while Granite State styled its motion before Judge Kays as one to dismiss or stay the Missouri Action, KM Tactical argued it is "effectively a motion to transfer venue." *KM Tactical, LLC*, No. 4:23 Civ. 874 (DGK) (W.D. Mo. Nov. 30, 2023), Dkt. No. 50 at 3. Moreover, Granite State submitted a copy of the reply brief KM Tactical filed in this action to Judge Kays in the Missouri Action. *Id.*, Dkt. No. 52 Ex. A.

(S.D.N.Y. Apr. 4, 2023) (declining to engage in a factor-by-factor analysis of the

balance of convenience because plaintiff provided a "recent and nearly identical []

case to guide the Court").[9]

## CONCLUSION

For the reasons set forth above, KM Tactical's motion to transfer venue is

**DENIED**.  The Clerk of Court is respectfully directed to close Docket No. 44.

DATED:    New York, New York
          September 27, 2024

_____
The Honorable Gary Stein
United States Magistrate Judge

---

[9] One argument made by KM Tactical in this Court, which was not specifically addressed in Judge Kays' decision, is that Missouri law applies to the parties' dispute.  (Pl. Br. at 6-7).  But this circumstance does not meaningfully tilt the balance of convenience analysis in the direction of Missouri.  *See, e.g.*, *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 398 ("The forum's familiarity with the governing law is typically to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states.") (citation omitted). Indeed, in the *Primary Arms* case, Judge Schofield applied Texas law in deciding Granite State's and the defendant's motions for partial summary judgment.  *See Primary Arms*, 2024 WL 4008167, at *2.