UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GRANITE STATE INSURANCE : 23 Civ. 7769 (ALC) (GS)
COMPANY, :
 :
               Plaintiff, : OPINION & ORDER
 :
      - against - :
 :
KM TACTICAL, LLC, :
 :
              Defendant. :
------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Pending before the Court is a motion by nonparty Berkshire Hathaway Specialty Insurance Company ("BHSI") to intervene in this action pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. The motion is opposed by Defendant KM Tactical, LLC ("KM Tactical"). For the reasons set forth below, BHSI's motion is **GRANTED**.[1]

## BACKGROUND

### A. Granite State's Action in This Court

This action arises from an insurance coverage dispute between Plaintiff Granite State Insurance Company ("Granite State") and KM Tactical, a firearms manufacturer located in Missouri. Granite State issued several commercial general liability policies to KM Tactical, covering annual policy periods from September

---

[1] On February 14, 2025, the Honorable Andrew L. Carter, Jr. referred BHSI's motion to intervene to the undersigned to hear and determine as a non-dispositive motion. (Dkt. No. 78). A motion seeking intervention under Rule 24(b) is considered non-dispositive. *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (JCF), 2016 WL 11645644, at *1-3 (S.D.N.Y. June 6, 2016).

2018 to September 2022. (Dkt. No. 1 ("GSIC Compl.") ¶¶ 3, 33). In 2022 and early 2023, the New York Attorney General and the cities of Buffalo and Rochester filed separate lawsuits against KM Tactical, claiming that it (as well as other defendants) unlawfully sold and shipped unfinished frames and receivers for firearms into New York that were used to assemble fully functioning firearms known as "ghost guns" (the "Underlying Lawsuits"). (*Id.* ¶¶ 2, 15-32).[2] KM Tactical tendered the Underlying Lawsuits to Granite State, requesting payment of its defense expenses and indemnification against any settlements or judgments. (*Id.* ¶¶ 4, 34).

Denying KM Tactical's claims for coverage, Granite State instituted this declaratory action on August 31, 2023. (Dkt. No. 1). Granite State seeks a declaration establishing that, under the policies, it is not obligated either to defend or to indemnify KM Tactical in the Underlying Lawsuits. (GSIC Compl. ¶¶ 4, 36–46).[3] KM Tactical has asserted counterclaims against Granite State for breach of contract, a declaratory judgment that Granite State is obligated to provide coverage, and bad faith denial of coverage. (Dkt. No. 18 ¶¶ 7–28).

---

[2] *See New York v. Arm or Ally, LLC*, No. 22 Civ. 6124 (JMF) (S.D.N.Y. July 18, 2022); *City of Buffalo v. Smith & Wesson Brands, Inc.*, No. 1:23 Civ. 66 (FPG) (W.D.N.Y. Jan. 23, 2023); *City of Rochester v. Smith & Wesson Brands, Inc.*, No. 6:23 Civ. 6061 (FPG) (W.D.N.Y. Jan. 24, 2023).

[3] Granite State has initiated three similar insurance coverage actions in this District against co-defendants of KM Tactical in the Underlying Lawsuits. *See Granite State Ins. Co. v. Primary Arms, LLC*, No. 23 Civ. 7651 (LGS), 2024 WL 4008167 (S.D.N.Y. Aug. 30, 2024) (granting Granite State's motion for partial summary judgment and holding that Granite State did not have a duty to defend the insured under the relevant policies) (notice of appeal filed Oct. 18, 2024 (No. 24-2748)); *Granite State Ins. Co. v. Rainier Arms, LLC*, No. 23 Civ. 7644 (MMG), 2025 WL 935002 (S.D.N.Y. Mar. 27, 2025) (same); *Granite State Ins. Co. v. GS Performance, LLC*, No. 23 Civ. 07646 (LJL), 2025 WL 19826 (S.D.N.Y. Jan. 2, 2025) (granting default judgment in favor of Granite State against insured).

## B. KM Tactical's Suit in the Western District of Missouri

BHSI issued a commercial general liability policy to KM Tactical for the policy period September 2022 to September 2023, *i.e.*, immediately following the expiration of the last Granite State policy. (Dkt. No. 69 ¶ 3; Dkt. No. 69-1 at 2). BHSI asserts, and KM Tactical does not dispute, that the terms of the BHSI policy are virtually identical to those of the Granite State policies. (Dkt. No. 70 at 1-2, 3). KM Tactical tendered the Underlying Lawsuits to BHSI as well, claiming that BHSI was obligated to defend and indemnify KM Tactical with respect to the time period covered by the BHSI policy. (Dkt. No. 69-3 ¶ 31). Like Granite State, BHSI denied coverage. (*Id.* ¶ 32).

Unlike Granite State, BHSI did not then institute a declaratory judgment action against KM Tactical. Instead, on November 30, 2023, ten days after filing its Answer and Counterclaims in this action, KM Tactical sued BHSI in the Western District of Missouri (the "Missouri Action"). *See KM Tactical, LLC v. Berkshire Hathaway Specialty Ins. Co.*, No. 4:23 Civ. 874 (DGK) (W.D. Mo. Nov. 30, 2023). Five days later, KM Tactical filed an amended complaint naming Granite State as an additional defendant. (Dkt. No. 69-2).

In the Missouri Action, KM Tactical seeks declarations that BHSI and Granite State are obligated to defend and indemnify KM Tactical in the Underlying Lawsuits; it also asserts claims for breach of contract and vexatious refusal to provide coverage. (*Id.* ¶¶ 6, 15-28). On February 8, 2024, BHSI filed its Answer in the Missouri Action along with Counterclaims seeking a declaratory judgment that

3

it is not required to defend or indemnify KM Tactical in the Underlying Lawsuits. (Dkt. No. 69-3).

### C. Motion Practice Over the Proper Forum

On February 9, 2024, Granite State filed a motion to dismiss or stay the Missouri Action on the ground that this case was the "first-filed" action. (*KM Tactical, LLC*, No. 4:23 Civ. 874 (DGK) (W.D. Mo.), Dkt. No. 25). BHSI joined in Granite State's motion. (*Id.* at Dkt. No. 41). The following week, on February 16, 2024, KM Tactical filed a motion to transfer this action to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a) so that it could be heard together with the Missouri Action. (Dkt. Nos. 44 & 45 at 2).

On May 1, 2024, the Honorable Greg Kays granted Granite State's motion to stay the Missouri Action pending the resolution of KM Tactical's motion to transfer pending before this Court. *See KM Tactical, LLC v. Berkshire Hathaway Specialty Ins. Co.*, No. 4:23-cv-0874-DGK, 2024 WL 2951760 (W.D. Mo. May 1, 2024). Applying the first-filed rule under Eighth Circuit precedent, Judge Kays found that the circumstances do not weigh in favor of venue being in Missouri and, if anything, tilt towards the Southern District of New York. *Id.* at *2.

On September 27, 2024, this Court denied KM Tactical's motion to transfer venue of this action to the Western District of Missouri. *See Granite State Ins. Co. v. KM Tactical, LLC*, No. 23 Civ. 7769 (ALC) (GS), 2024 WL 4326936 (S.D.N.Y. Sept. 27, 2024). Applying Second Circuit law, the Court found that no special circumstances existed to warrant departure from the first-filed rule, *id.* at *5-6, and that the balance of convenience likewise did not support transfer to Missouri, *id.* at

4

\*7-8. In so ruling, the Court agreed with Judge Kays' reasoning that "'the interests of justice, including the efficient administration of justice, weigh slightly in favor of venue being in the SDNY, where coverage actions involving similar policies issued to other ghost gun manufacturers are being litigated,'" and that "'litigating similar coverage lawsuits in the same district will likely improve judicial efficiency.'" *Id*. at \*7 (quoting *KM Tactical*, 2024 WL 2951760, at \*2).

Since this Court's denial of KM Tactical's motion to transfer, the Missouri Action has remained stayed, with the parties periodically providing status updates to Judge Kays as to the status of this litigation. (*See KM Tactical*, No. 4:23-cv-0874-DGK (W.D. Mo.), Dkt Nos. 64-66).

### D. BHSI's Motion to Intervene

On February 1, 2024, shortly before Granite State and KM Tactical filed their competing forum motions in the Missouri Action and this action, BHSI filed a letter-motion in this case, requesting a conference to discuss its intention to file a motion to intervene pursuant to Federal Rule of Civil Procedure 24(b). (Dkt. No. 41). KM Tactical filed a letter opposing BHSI's intervention. (Dkt. No. 42). Granite State, on the other hand, supported BHSI's request. (Dkt. No. 43). After KM Tactical's motion to transfer venue was denied, BHSI filed a letter-motion renewing its request (Dkt. No. 53), which KM Tactical again opposed (Dkt. No. 59).

Following a conference held on December 4, 2024, Judge Carter granted BHSI leave to file a motion to intervene. (Dkt. No. 65). On January 10, 2025, BHSI filed its motion (Dkt. No. 68), supported by a memorandum of law (Dkt. No. 70

("BHSI Br.")) and a declaration from counsel (Dkt. No. 69) attaching, *inter alia*, BHSI's proposed Complaint in Intervention (Dkt. No. 69-4 ("BHSI Compl.")). KM Tactical submitted its opposition brief (Dkt. No. 74 ("KM Br.")), together with a declaration from counsel (Dkt. No. 75), on January 24, 2025. BHSI filed its reply brief on January 31, 2025. (Dkt. No. 77 ("Reply")).

## LEGAL STANDARDS

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure. Under Rule 24(a), the court "*must* permit" intervention when a party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). Under Rule 24(b), the court "*may* permit [a party] to intervene" when that party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added).

"To prevail on a motion for intervention as of right, a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006)) (emphasis in original) (cleaned up). "This test is conjunctive; that is,

'[f]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application.'" *Cont'l Indem. Co. v. Bulson Mgmt., LLC*, No. 20 Civ. 3479 (JMF), 2020 WL 6586156, at *2 (S.D.N.Y. Nov. 10, 2020) (quoting *"R" Best Produce*, 467 F.3d at 241) (emphasis in original).

Permissive intervention under Rule 24(b) "is discretionary and should be construed liberally." *Id.* at *3; *see also Rudolph v. Hudsons Bay Co.*, No. 18 Civ. 8472 (RKC), 2019 WL 1416986, at *2 (S.D.NY. Mar. 29, 2019) ("The district court's discretion on a permissive intervention motion is 'very broad.' (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986))). As required by the text of Rule 24(b), "a movant must establish timeliness and a common question of fact or law before a court can exercise its discretion." *Cont'l Indem.*, 2020 WL 6586156, at *3. Once those prerequisites have been satisfied, the court "may, in its discretion, consider a host of factors in determining whether to permit intervention." *Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018).

"Courts typically consider the same four factors to determine permissive intervention as they would for mandatory intervention." *Rocano Gen. Constr. Inc. v. US Underwriters Ins. Co.*, No. 22 Civ. 6293 (PKC) (JRC), 2024 WL 472864, at *2 (E.D.N.Y. Feb. 7, 2024); *see also Girard St. Inv. Holdings LLC v. Petroleos de Venezeula, S.A.*, No. 23 Civ. 10772 (JSR), 2024 WL 4556124, at *1 (S.D.N.Y. Oct. 23, 2024) ("When considering an application for permissive intervention, '[t]he court considers substantially the same factors' as when it considers intervention as of

7

right under Rule 24(a)(2)." (quoting *"R" Best Produce*, 467 F.3d at 240)).  In the context of permissive intervention, however, "district courts in the Second Circuit have recognized that the four factors should be considered as a whole, rather than focusing narrowly on any one of the criteria, and that application of the factors is flexible and discretionary." *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. N.Y.*, No. 19 Civ. 11285 (KMK), 2020 WL 5658703, at *5 (S.D.N.Y. Sep. 23, 2020) (cleaned up).  The court also "must consider whether granting permissive intervention will unduly delay or prejudice the adjudication of the rights of the existing parties." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (citation omitted); *see* Fed. R. Civ. P. 24(b)(3).

"The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *see also Nu-Chem Labs., Inc. v. Dynamic Labs., Inc.*, No. 96 Civ. 5886 (JS), 1998 WL 35180780, at *4 (E.D.N.Y. May 19, 1998) ("'The rule of permissive intervention was intended to promote judicial economy by preventing multiple lawsuits where common questions of law or fact are involved.'") (quoting *Ceribelli v. Elghanayan*, No. 91 Civ. 3337 (CSH), 1994 WL 529853, at *2 (S.D.N.Y. Sept. 28, 1994)).  "However, the rule is not intended to allow for the creation of whole new suits by intervenors." *Wash. Elec. Co-op.*, 922 F.2d at 97.

## DISCUSSION

On this motion, BHSI seeks only permissive intervention under Rule 24(b); it

does not claim a right to intervene under Rule 24(a). (BHSI Br. at 1, 4-8; Reply at 1). Nevertheless, both BHSI and KM Tactical focus their analysis on the four factors required to be considered when determining a motion for intervention as of right. (*See* BHSI Br. at 4-7; KM Br. at 3-11; Reply at 2-8). Indeed, KM Tactical incorrectly argues that BHSI's "'failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application.'" (KM Br. at 3 (quoting *Cont'l Indem.*, 2020 WL 6586156, at *2)). As noted above, that is true only for mandatory intervention under Rule 24(a); the "flexible and discretionary" Rule 24(b) inquiry does not "focus[] narrowly on any one of the[se] criteria." *Bldg. & Realty Inst.*, 2020 WL 5658703, at *12 (citation omitted); *see also Red Rock Sourcing LLC v. JGX, LLC*, No. 21 Civ. 1054 (JPC), 2023 WL 1468980, at *4 (S.D.N.Y. Feb. 2, 2023) ("In contrast to the more stringent test for mandatory intervention, courts conduct a holistic review of the totality of circumstances when assessing permissive intervention.").

As BHSI's motion only raises a question of permissive intervention, the Court will first examine the threshold requirements for relief under Rule 24(b): (1) whether BHSI's motion is "timely," *see* Fed. R. Civ. P. 24(b)(1), and (2) whether BHSI's proposed complaint shares "a common question of law or fact" with this action, *see* Fed. R. Civ. P. 24(b)(1)(B). The Court will then evaluate whether the relevant factors, including the other factors governing mandatory intervention, the interests of judicial economy, and the issue of undue delay or prejudice, support BHSI's request for intervention.

### A. Timeliness of BHSI's Motion to Intervene

In assessing the timeliness of a motion to intervene, courts consider: "'(1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention.'" *Hulinsky v. Cnty. of Westchester*, No. 22 Civ. 6950 (PMH), 2023 WL 3162428, at *2 (S.D.N.Y. Apr. 28, 2023) (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d at 198).

Here, BHSI has moved to intervene at an early stage of this litigation. There has been no discovery, and a discovery schedule has not even been set. The only other motion practice to date in this case concerned whether the suit should remain in this District or be transferred to Missouri. Under such circumstances, courts typically find a motion to intervene to be timely. *See, e.g.*, *Hulinsky*, 2023 WL 3162428, at *3 ("The Court has not scheduled a Rule 16 initial pretrial conference, no scheduling orders related to discovery deadlines have been issued, and no discovery has taken place. 'In other words, this litigation is in its early stages such that the motion to intervene is timely because the intervention would not significantly affect the case's manageability.' Accordingly, AWM's motion to intervene is timely[.]") (quoting *CIFI Latam, S.A. v. Tauch*, No. 19 Civ. 5607 (LTS) (SN), 2020 WL 1164687, at *2 (S.D.N.Y. Mar. 11, 2020)).

KM Tactical argues that BSHI's motion is untimely because BHSI first wrote to Judge Carter seeking to file a motion to intervene on February 1, 2024, "*after* this

action had been pending for [five] months,[4] *after* the [Missouri Action] had been pending for three months, and *after* this Court ordered briefing on the motion to transfer venue." (KM Br. at 4 (emphasis in original)).  KM Tactical does not, however, explain how this modest delay caused any prejudice or how BHSI's intervention would delay this case, given that discovery has not yet commenced. Courts have found that similar delays do not undermine the timeliness of a motion to intervene.  *See, e.g.*, *Rocano Gen. Constr.*, 2024 WL 472864, at *3 (intervention motion filed five months after lawsuit was commenced was timely where intervention "would not significantly delay this case"); *Medequa LLC v. O'Neill & Partners LLC*, No. 21 Civ. 6135 (AKH), 2022 WL 3364294, at *2 (S.D.N.Y. July 26, 2022) (rejecting argument that intervenor's five-to-six month delay in filing motion after becoming aware of interest in case rendered motion untimely, as "the delay of a few months did not prejudice the existing parties"); *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 89 (S.D.N.Y. 2018) ("[C]ourts have found motions to intervene timely where, as here, these motions were brought a 'few months' after the claims.") (collecting cases).

Accordingly, the Court finds that BHSI's motion to intervene is timely.

### B. Common Question of Law or Fact

It is undisputed that BHSI's proposed Complaint in Intervention shares common questions of law or fact with the claims and defenses in this action.  Both

---

[4] KM Tactical's brief actually states that this action had been pending for "six months" before BHSI first sought intervention. (KM Br. at 4).  But this action was filed on August 31, 2023 (Dkt. No. 1), and BHSI filed its letter requesting a premotion conference on its motion to intervene on February 1, 2024 (Dkt. No. 41), five months and one day later.

11

disputes arise from the insurer's denial of coverage for the Underlying Lawsuits, and the relevant terms of the two insurers' commercial general insurance policies with KM Tactical are virtually identical. (*See* BHSI Br. at 3-4; KM Br. at 10). Both Granite State and BHSI seek the same relief: a declaration that, under their respective policies, the insurer is obligated neither to defend nor indemnify KM Tactical in the Underlying Lawsuits. (*Compare* GSIC Compl. ¶¶ 39-46 & p. 10 *with* BHSI Compl. ¶¶ 53-57 & p. 11). Moreover, both insurers rely on substantially the same reasons for denying coverage, based on the same language in their respective policies. (*Compare* GSIC Compl. ¶¶ 5-7 *with* BHSI Compl. ¶¶ 7-10).

Accordingly, this threshold requirement for permissive intervention is also satisfied.

### C.  Factors Bearing on Permissive Intervention

BHSI and KM Tactical vigorously dispute whether BHSI meets the other criteria traditionally examined in the intervention analysis: that BHSI has an "interest" in this action that "may be impaired" by the disposition of the action and that would not be "adequately protected" by the parties to the action. *See In re N.Y.C. Policing*, 27 F.4th at 799. BHSI argues that it has an "interest" in the "coverage issues" involved in this case, as they are identical to the issues in its own coverage dispute with KM Tactical. (Reply at 4; *see also* BHSI Br. at 6). BHSI further argues that its interest may be "impaired" to the extent there is a ruling on the merits of the Granite State-KM Tactical coverage dispute without BHSI having been afforded an opportunity to be heard. (BHSI Br. at 7). Finally, BHSI argues

12

that Granite State will not adequately protect BHSI's interests because Granite State "has no standing or reason to seek an adjudication of the rights of BSHI and KM Tactical." (*Id.*).

For its part, KM Tactical points out that BHSI has "no interest in litigating Granite State's coverage obligations"—only an interest in litigating its own—and hence lacks a "'direct, substantial, and legally protectable'" interest in this action. (KM Br. at 6 (quoting *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001)). KM Tactical further argues that BHSI's interests would not be impaired by a ruling on the merits in this action because it "would not be binding on BHSI." (*Id.* at 9). Finally, KM Tactical argues that, to the extent the coverage issues for both BHSI's and Granite State's policies are the same, Granite State can adequately represent BHSI's interests. (*Id.* at 10-11).

Whatever force KM Tactical's arguments might have if BHSI were claiming intervention as of right, they carry considerably less weight under the more flexible and liberal Rule 24(b) standard. BHSI is certainly "interested" in the outcome of this action in at least a colloquial sense, in that its coverage dispute with KM Tactical relates to the same Underlying Lawsuits and hinges on an interpretation of the exact same contractual language. While a ruling on the merits in this action may not be binding on BHSI, it would, if adverse to Granite State, impair BHSI's own coverage position as a practical matter. Even Rule 24(a)'s more demanding inquiry looks to whether the disposition of the action "may *as a practical matter* impair or impede the [would-be intervenor's] ability to protect its interest." Fed. R.

Civ. P. 24(a)(2) (emphasis added); *see Maryland Cas. Co. v. W.R. Grace & Co.*, No. 88 Civ. 4337 (JSM), 1996 WL 34154, at *2 (S.D.N.Y. Jan. 30, 1996) ("This is an inquiry into the practical disadvantage suffered, and does not require the would-be intervenor to go so far as to show that *res judicata* principles would affect any later suit they might bring.").

More importantly, the Court's exercise of its discretion under Rule 24(b) is informed by broader considerations, including the underlying purpose of intervention: "to prevent a multiplicity of suits where common questions of law or fact are involved." *Wash. Elec. Co-op.*, 922 F.2d at 97.  Permitting BHSI to intervene would serve this purpose: it would prevent multiple suits, one in this District and one in the Western District of Missouri, that turn on the same question of coverage.  As both this Court and Judge Kays have found, "litigating [these] similar coverage lawsuits in the same district will likely improve judicial efficiency." *Granite State*, 2024 WL 4326936, at *7; *KM Tactical*, 2024 WL 2951760, at *2.  KM Tactical itself has acknowledged as much.  In moving to transfer this case so it could be combined with the Missouri Action, KM Tactical affirmatively argued that a transfer "would avoid the substantial duplication of effort and expense that would result" if the two suits were heard in two different courts. (Dkt. No. 32 at 2).  KM Tactical also highlighted the importance of obviating "the potential for inconsistent rulings" that could result from two separate actions.  (Dkt. No. 45 at 10).

Of course, KM Tactical advanced these arguments in support of a transfer to its preferred forum in Missouri, its home state.  But the benefits of hearing both

14

disputes in the same court remain the same whether that court is located in Missouri or in New York. Both this Court and the Western District of Missouri have now agreed that this District is the more appropriate forum to resolve the coverage dispute between Granite State and KM Tactical. Given that determination, the interests of judicial economy favor resolving the coverage dispute between BHSI and KM Tactical in this forum as well. *See Rocano Gen. Constr.*, 2024 WL 472864, at *4 (allowing permissive intervention where it "would allow the Court to address a single core issue—whether U.S. Underwriters properly disclaimed coverage to any potential additional insureds—in a single proceeding"); *Medequa LLC*, 2022 WL 3364294, at *3 (allowing permissive intervention where it "will promote judicial economy by enabling [the court] to resolve any claims in one proceeding").

KM Tactical argues that the risk of inconsistent rulings is "speculative" and "contingent," which it contends is insufficient. (KM Br. at 9). But the risk of inconsistent rulings is always just that: a risk, which may not come to pass if the two courts decide the issue the same way. The risk itself remains a powerful reason supporting intervention. The cases KM Tactical cites do not involve or address a claim of inconsistent rulings, but instead merely hold that a contingent "interest" in a dispute is insufficient for Rule 24(a) purposes. (*See id.* (citing *Cont'l Indem.*, 2020 WL 6586156, at *2, and *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984)).

Courts have repeatedly permitted insurers to intervene under Rule 24(b)—even where they were not entitled to intervene as of right under Rule 24(a)—to facilitate the resolution in a single forum of insurance coverage disputes involving a common question of law or fact. *See, e.g.*, *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, Civil Action No. 11-2375, 14-1930, 14-1933, 2016 WL 1393388, at *6 (E.D. La. Apr. 8, 2016) (finding that "judicial economy will be served by allowing State National to intervene in this action" so that "this lawsuit can be used to determine Arch's declaratory judgment action and State National's declaratory judgment action in one proceeding while allowing all parties to be heard"); *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.*, 314 F.R.D. 180, 187 (E.D. Va. 2016) (permitting excess insurers to intervene in declaratory judgment action brought by primary insurers, given that "the nexus between the underlying claims and the multiple insurance policies is irrefutable," in order to "prevent inconsistent rulings and efficiently resolve the claims"); *Dave's Detailing, Inc. v. Catlin Ins. Co.*, No. 1:11-cv-1585-RLY-DKL, 2012 WL 5377880, at *3 (S.D. Ind. Oct. 31, 2012) ("If Catlin is unable to intervene and coverage is denied, then it runs the risk of future inconsistent judgments. . . . Put another way, intervention allows efficient use of judicial resources and ensures consistency by resolving related issues in a single proceeding."); *TIG Ins. Co. v. Haseko Hoes, Inc.*, Civil No. 10-00107 DAE-KSC, 2010 WL 11507716, at *5 (D. Haw. Sept. 9, 2010) ("Allowing Clarendon to intervene will promote judicial economy. As pointed out by [the defendant-insured] in the motion to consolidate, because the insurers will likely file motions for summary judgment

concerning their coverage obligations and the motions will raise the same legal issues, they should be adjudicated at the same time to prevent inconsistent rulings."); *Pa. Nat'l Mut. Cas. Ins. Co. v. Perlberg*, Civil No. CCB-09-1698, 268 F.R.D. 218, 226 (D. Md. 2010) (finding permissive intervention appropriate because "[t]his lawsuit can determine Pen National's declaratory judgment action and New Hampshire's contribution claim in one proceeding, while allowing all parties to be heard" and "avoid[ing] a competing suit in state court").

So too here, the interests of judicial economy, and of avoiding inconsistent rulings, weigh in favor of permitting BSHI to intervene under Rule 24(b). Nor does the Court believe that granting BSHI's motion would unduly delay this action or prejudice KM Tactical. *See* Fed. R. Civ. P. 24(b)(3). As to delay, this action is still in its relative infancy, no discovery or briefing on the merits having yet occurred, and incorporating the BSHI-KM Tactical coverage dispute should not unduly prolong this proceeding given the substantial legal and factual overlap with the Granite State-KM Tactical coverage dispute. It cannot seriously be contended (nor does KM Tactical contend) that permitting intervention would "radically alter" the scope of this action or be tantamount to "the creation of a whole new suit[]" by BHSI involving fundamentally different issues, *see Wash. Elec. Co-op.*, 922 F.2d at 97.

As to prejudice, KM Tactical's only claim of prejudice is that intervention would deprive KM Tactical of its choice of forum in Missouri for adjudicating its coverage dispute with BHSI under the first-filed rule. (KM Br. at 11-12). This claim, however, overlooks that this action was filed before the Missouri Action; that

17

the Missouri Action has been stayed; and that both this Court and Judge Kays have ruled that the Granite State-KM Tactical coverage dispute should proceed in the Southern District of New York. Thus, KM Tactical will be litigating its coverage dispute with Granite State in New York no matter what. It is difficult to see how KM Tactical would be seriously prejudiced by having to litigate its mirror-image coverage dispute with BHSI in the same forum rather than through a duplicative action in a different forum. Any conceivable prejudice is outweighed by the strong interests of the parties and the judicial system in the efficient resolution of both disputes in the same forum.

Considering all the relevant factors under the holistic analysis demanded under Rule 24(b), see *Red Rock Sourcing*, 2023 WL 1468980, at *4, the Court thus concludes in its discretion that permissive intervention is warranted in this case to facilitate the efficient resolution of disputes involving a common question of law or fact in one proceeding.

## CONCLUSION

For the reasons set forth above, BHSI's motion to intervene in this actin under Fed. R. Civ. P. 24(b) is **GRANTED**. BHSI shall file its Complaint in Intervention within 7 days of this Order, and KM Tactical shall file its response to the Complaint in Intervention within 21 days of such filing. The Clerk of Court is respectfully directed to close the motion pending at Docket No. 68.

DATED:    New York, New York
          May 27, 2025

_____
The Honorable Gary Stein
United States Magistrate Judge